## NATIONAL LABOR RELATIONS BOARD v. NINA DYE WORKS CO., Inc.

No. 10714.

United States Court of Appeals Third Circuit.

Reargued April 7, 1953.

Decided April 29, 1953.

Marcel Mallet-Prevost, Washington, D. C. (George J. Bott, General Counsel, David P. Findling, Associate General Counsel, A. Norman Somers, Asst. General Counsel, Dominick L. Manoli and Mark C. Curran, Attorneys, National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

John F. Reddy, Jr., New York City (Engel, Judge, Miller & Sterling, Francis G. Stapleton and Joseph M. Midler, New York City, on the brief), for respondent.

Before MARIS, McLAUGHLIN and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The action of the Board in issuing the complaint in this case having now been upheld by the Supreme Court, 344 U.S. 924, 73 S.Ct. 390, the petition for enforcement of its order issued against respondent is before us on the merits.

The Board found that respondent had violated the Act by interfering with, restraining and coercing employees in the exercise of their statutory rights and by discharging two employees for union activity.

The Textile Workers Union began to organize respondent's employees in May, 1949. A group of employees opposing the move circulated a letter petition presenting their views among the night workers. There is testimony that one of the group gave the letter to a plant foreman, asking him to turn it over to one of the day employees, and that within a half hour the foreman handed the letter to an employee saying, "Here is a petition. I'd like to have you take it around the plant * * * read it and sign it." Tate, the employee, did then circulate the letter among the employees. He testified that while he was doing this he found that some of the workers desired permission from Rhodes, president of the employer, before they would sign. According to Tate, he talked with Rhodes who said it was all right for Tate to take the petition around, "* * * that he would like to know how the fellows felt about the union himself." Rhodes denied ever discussing the petition with Tate.

Employees Good and Blauser testified that after they had refused to sign the petition their foreman, Darrah, came up to them and remarked that each of them had better sign it if they wished to hold their jobs. This resulted in Good signing for himself and for Blauser at the latter's request. Darrah denied that he ever had any conversation with Good or Blauser concerning the petition.

There is further testimony that during this period employees Ruby and Miller talked with Tate, expressing their approval of the union's attempt to organize respondent's employees. Tate said that he told foreman Royce of the conversation at the latter's request and that Royce commented, "Well, I will see that they do not last long." This is contradicted by Royce. There was evidence of another incident early that summer which occurred during the union campaign. According to Virgil Fauth, also an employee, respondent's treasurer, Sam Fine, said to him, "* * * if the union comes in, we'll move out." Fauth said there were other employees present at that time. Fine's testimony of the conversation was that Fauth called him and handing him a copy of the union paper asked if he had seen it. There was some comment, according to Fine, regarding the paper. While he did not specifically deny the statement attributed to him by Fauth, the conversation, as he related it, did not

include anything concerning his moving out if the union came in. Fauth also testified that in the latter part of September, 1949, Rhodes asked him what he thought of the union. Fauth said that he replied, "* * * some people say it is all right; some says it is not." In answer to that, testified Fauth, Rhodes "* * * made the statement that if the union would come in he guaranteed him we wouldn't see Sam Fine or Arthur Rhodes around, that they would sell out or move out." Rhodes denied that he had ever had such a talk with Fauth.

The two employees discharged were Ralph Ruby and Charles Miller. Ruby operated a dye box in the plant. Unquestionably, he had been active in support of the union. According to him, on June 15, 1949, returning to his dye box from a legitimate errand, he was told by foreman Royce that he was being discharged because "The boss said your work is unsatisfactory." Shortly after that Miller, who had also been affirmatively in favor of the union, was laid off by the same foreman who, Miller claimed, said at the time, "The big boy told me to lay you off." Miller testified that, as Royce handed their pay checks to himself and Ruby, Royce said, "Boys, I hate this but it is not my fault. * * * That was the big boy's orders * * * You were both damn good workers." This version of the discharges is hotly disputed by evidence on behalf of the respondent to the effect that both Ruby and Miller were fired for incompetence. Ruby did have a "wrap up" [1] in his box just prior to Royce's letting him go. Royce stated that Ruby had a great deal of difficulty with tangles and "wrap ups", caused primarily by inattention to his work and his horseplay. A number of other witnesses corroborated this. There was also testimony that Miller was a slow worker and Royce said, "He had one bad habit. He was always bunched up and he seemed to be the center of attraction all the time, holding the other men from their work."

█ The Board accepted as credible the testimony of Tate, Fauth, Ruby and Miller. That evidence does support the Board's primary propositions that (1) the respondent encouraged the circulation of the anti-union petition among its employees to ascertain their attitude towards the union and did threaten employees with loss of jobs for failure to sign it; (2) the respondent threatened to discharge employees for supporting the union, questioned them about the union and threatened to move its plant if the latter was unionized; (3) the respondent discharged Ruby and Miller because of their union activities.

█ Despite strong evidence to the contrary, presented most capably on behalf of the respondent, particularly with respect to the discharge of Ruby and Miller, we cannot say that the record before us "* * * clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses * * *." Universal Camera Corp. v. Labor Board, 340 U.S. 474, 490, 71 S.Ct. 456, 466, 95 L.Ed. 456. As in that decision the evidence here in support of the Board's conclusions appears "* * * substantial when viewed, on the record as a whole * * *." The questions before us are factual. While conceivably we might have arrived at a different result than the Board in the first instance, we are bound by its findings based as they are on substantial evidence. NLRB v. Southland Mfg. Co., 4 Cir., 1952, 201 F.2d 244.

A decree will issue enforcing the Board's order. A form of decree will be submitted.

1. A "wrap up" is a bad tangle of the goods in a dye box.