**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SUNRISE LUMBER & TRIM CORP., Respondent.**

**No. 115, Docket 24222.**

United States Court of Appeals Second Circuit.

Argued Jan. 9, 1957.

Decided Feb. 18, 1957.

---

Theophil C. Kammholz, Gen. Counsel, Stephen Leonard, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel; Samuel M. Singer, Nancy M. Sherman, Attys., National Labor Relations Board, Washington, D. C., for petitioner.

Joseph T. King, Alexander Eltman, New York City, for respondent.

Before CLARK, Chief Judge, and LUMBARD and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

The National Labor Relations Board petitions for enforcement of its order, reported at 115 N.L.R.B. No. 127 (1956), issued against the respondent, Sunrise Lumber & Trim Corp.

The facts relevant to our decision, as found by the Trial Examiner and adopted by the Board, are as follows: The respondent maintains its office and place of business at Massapequa, New York, where it is engaged in the manufacture and sale of lumber, milled products, building supplies, and related products. On March 18, 1955, three of the respondent's truckdrivers met with John Cody, the business agent of Local 282, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and signed cards that authorized the union to enter into an agreement with the respondent "requiring membership [in the union] as a condition of employment." On March 19 two more employees of respondent, another truckdriver and a yardman, signed similar cards. Also on that day Cody visited the respondent's mill and talked with Francis J. Tursi, the respondent's president. Cody and Tursi, who both testified at the Board hearings, differed vehemently in their recollections of this conversation, but the Trial Examiner adopted the former's version.

According to Cody's testimony, Cody told Tursi that he was at the mill for the purpose of representing the employees and that he was going to "try to organize his business." Tursi asked which employees Cody was "going to organize," whereupon Cody said "the truckdrivers and one yardman." Tursi then asked Cody if he had any authorization cards. Cody answered that he had six, although only five had been signed at the time. Cody refused to let Tursi inspect the cards, but offered him a printed form

contract, explaining that it "was what we [the union] are asking for." Tursi first told Cody to give the form contract to his lawyer, whom he did not identify. He then announced that it "was against his religion to be unionized," and ordered Cody off the mill premises.

On March 23 another of respondent's truckdrivers signed a union authorization card. The next day the union filed with the Regional Director a petition for a representation election, alleging that the appropriate bargaining unit consisted of the respondent's "chauffeurs and yardman."

On March 25 Cody visited the mill and talked to the six employees who had signed cards. They told Cody that they would strike, if necessary, in order to obtain recognition of the union. Cody informed Tursi of their decision. Tursi took the six employees into his office, where he discussed their grievances outside of Cody's presence. Three of the employees testified that Tursi made several offers of wage increases and other benefits conditioned upon the employees' disavowal of the union. The men rejected these offers, saying that they would not give up representation in the union. Once again Tursi replied that it was "against his religion" to have a union in the mill. The men returned to where Cody was waiting, received strike placards from him, and began picketing.

Shortly after the strike began, Tursi and Francis Ruiz, a foreman in respondent's mill, approached the employees on the picket line. Ruiz told the strikers that they were "damn fools" for not accepting Tursi's offers, and Tursi said that he would sell his own trucks and rent others before he would recognize the union. Within the next few days Tursi spoke to two of the strikers while they were picketing and offered them $25 each if they would unload a freight car. They both refused. A few days later Tursi told one of the striking employees that Tursi would make arrangements for him to install fences sold by the company if he would buy a small truck necessary for the job. This offer was rejected.

On or about April 1 and 18, two of the strikers requested, and received, reinstatement. In May and June these two ceased work under circumstances that are not disclosed in the record and that are not alleged to have been unfair labor practices. On June 10 the attorney for the union wrote to the respondent demanding reinstatement of five employees, the four remaining strikers and one of the two who had been reinstated but whose employment had been severed before that date. On June 19, the respondent's attorney wrote, in reply, that he would be "pleased to discuss" the demand. On June 22 the union attorney tried unsuccessfully to reach the respondent's attorney by telephone, and a day or two afterwards the latter attempted to return the call with a similar lack of success. This pattern, interrupted by the union attorney's vacation, was repeated several times during the summer of 1955. No further correspondence ensued, and the four remaining strikers were not offered reinstatement.

On these facts the Trial Examiner found that the respondent had violated section 8(a) (5) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (5), by refusing to bargain with the representative of the majority of its employees in an appropriate bargaining unit. In addition, respondent was found to have violated both sections 8(a) (3) and 8(a) (1) by discriminating against employees on the basis of union membership and by discouraging membership in a labor organization. The Board adopted the Trial Examiner's findings, and ordered the respondent to cease and desist from refusing to bargain with Local 282 and from interfering with the employees in the exercise of their rights under section 7 of the National Labor Relations Act, 29 U.S.C.A. § 157. Affirmatively, the Board ordered the respondent to offer reinstatement with back pay to the four remaining strikers.

## I.

The respondent argues, *inter alia*, that it did not refuse to bargain with a representative of its employees because Local 282 never represented a majority of its employees in any appropriate bargaining unit. This argument is based on two contentions: (1) the Board incorrectly determined that an appropriate bargaining unit was comprised of eight employees who drove trucks and one yardman; (2) even if a unit so constituted was appropriate, Cody had indicated that his union was trying to organize the entire mill and therefore Tursi was justified in believing that the contemplated unit was not restricted to the truckdrivers and the yardman. We cannot accept either basis for this argument.

The Trial Examiner considered in great detail the duties, hours, and wages of the respondent's employees before concluding that an appropriate unit was composed of eight truckdrivers and one yardman. Cf. Burton-Lingo Co., 91 N.L.R.B. 5 (1950). It rejected the union's contention that the six strikers alone constituted an appropriate unit, as well as the company's claim that nine more employees should have been included for an overall total of twenty. The Trial Examiner excluded others from the unit because of the part-time nature of their employment, the varying functions they performed, or their supervisor status in the operating of the mill. Of necessity, in a small organization such as that of respondent many of the employees perform overlapping functions. But we recognize the discretion that must be accorded to the Board in determining the appropriateness of a collective bargaining unit, and thus we will uphold such a determination unless it is "unreasonable and arbitrary." Packard Motor Car Co. v. N. L. R. B., 1947, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040. There is no indication that the determination here was arbitrary or that it was motivated by improper considerations.

The respondent also argues that the Board was not empowered to determine the appropriate unit in this unfair labor practice proceeding, because it had previously approved the withdrawal by the union of its petition for a representation election. This position is wholly untenable, however, because it is the duty of an employer to bargain with the majority representative of its employees whether or not that representative has been certified. See United Mine Workers of America v. Arkansas Oak Flooring Co., 1956, 351 U.S. 62, 71–72, 76 S.Ct. 559, 100 L.Ed. 941; N. L. R. B. v. Dahlstrom Metallic Door Co., 2 Cir., 1940, 112 F.2d 756, 757. This rule applies even where, as here, the majority representative has filed a representation petition that it subsequently withdraws after the employer's refusal to bargain. Spitzer Motor Sales, Inc., 102 N.L.R.B. 437, 439, 443 (1953), *enforced*, 2 Cir., 1954, 211 F.2d 235. And, of necessity, the Board must frequently determine the appropriateness of an alleged bargaining unit in order to pass upon a charge that an employer has refused to bargain with the majority representative of that unit.

Nor is respondent justified in its contention that the union's demand was for a mill-wide bargaining unit. Although the content of Cody's initial conversation with Tursi was disputed by the witnesses, it was clear to Tursi by March 25, the date of the strike, that the union sought to represent only the truckdrivers and the yardman. At that time Tursi's refusal to bargain was unquestionably attributable to his anti-union sentiments, rather than to his doubts about the majority status of Local 282. Cf. N. L. R. B. v. Clearfield Cheese Co., 3 Cir., 1954, 213 F.2d 70, 73–74.

The respondent also contends that the complaint should have been dismissed in its entirety because the union was demanding a closed shop provision that is illegal under the National Labor Relations Act. Assuming, *arguendo*, that the union was, in fact, demanding an illegal security clause, we hold that

such a demand is a matter to be resolved in the bargaining process, not an excuse for refusing to bargain at all. N. L. R. B. v. White Construction & Engineering Co., 5 Cir., 1953, 204 F.2d 950, 953. In addition, the respondent argues that it was error to find a refusal to bargain with the union representative because Cody never offered to bargain; *i. e.*, his demands were always couched in the form of an ultimatum. This contention must be readily dismissed, however, because there is substantial evidence in the record to support the Board's finding that Tursi's refusal to bargain with the union representative was motivated by his strong objection to unions and not by the particular terms of the printed form contract. This finding is further substantiated by Tursi's willingness to offer generous wage increases and other benefits to his employees on the condition that they would renounce the union.[1]

## II.

The respondent also urges that the Board erred in its finding that the striking employees were unfair labor practice strikers rather than economic strikers. The company claims that there was no support for its finding of violations of Sections 8(a) (1) and 8(a) (3). These contentions cannot be sustained, however. Three employees testified that at the closed meeting on March 25 Tursi was told that the employees would strike only if the company refused to bargain with their union representative. This testimony is reinforced by the strikers' rejection of the individual raise offers.

The respondent's actions clearly constituted a violation of Section 8(a) (1), because it repeatedly attempted to interfere with the employees' rights under Section 7 of the Act. For example, it threatened to sell its own trucks and rent others, thereby abolishing the strikers' jobs. When such a step is motivated by a desire to interfere with the employees' rights under the Act, rather than by economic considerations, it constitutes a Section 8(a) (1) violation. Cf. N. L. R. B. v. Armstrong Tire & Rubber Co., 5 Cir., 1955, 228 F.2d 159; N. L. R. B. v. Nina Dye Works Co., 3 Cir., 1953, 203 F.2d 849. In addition, the respondent violated both Sections 8 (a) (1) and 8(a) (3) by failing to offer reinstatement to the strikers upon notice of such a request by the union attorney on June 10. The equivocal reply by the respondent's attorney was inadequate, because unfair labor practice strikers are entitled to reinstatement with back pay even if replacements for them have been made. Mastro Plastics Corp. v. N. L. R. B., 1956, 350 U.S. 270, 278, 76 S.Ct. 349, 100 L.Ed. 309. Once put on notice by the original request, the respondent was obligated to offer reinstatement to all the strikers and its duty was not discharged merely by reinstating some of them.

## III.

Lastly, the respondent claims that the Board improperly denied its motion to reopen the record for the purpose of permitting the respondent to submit additional, newly discovered evidence. The evidence sought to be introduced consisted of police records allegedly indicating that Cody had been convicted three times for various offenses. The respondent contends that this evidence came to its attention only because of a newspaper article appearing after the Board proceedings, and that its admission is crucial in view of the weight placed by the Trial Examiner on Cody's testimony. But the Board's refusal to reopen these proceedings was not an abuse of discretion inasmuch as the new evidence bore only on credibility. It is well settled that "newly discovered evi-

1. An offer to raise wages conditioned on withdrawal from a union is evidence of a failure to bargain in good faith, N. L. R. B. v. A. E. Nettleton Co., 2 Cir., decided Jan. 21, 1957, 241 F.2d 130, and negotiating directly with the employees without consulting their union representative constitutes a violation of § 8(a) (1). See May Department Stores Co. v. N. L. R. B., 1945, 326 U.S. 376, 383–385, 66 S.Ct. 203, 90 L.Ed. 145.

dence, the effect of which is merely to discredit, contradict or impeach a witness does not afford a basis for the granting of a new trial." Davis v. Yellow Cab Co., 5 Cir., 1955, 220 F.2d 790, 792; see United States v. Johnson, 7 Cir., 1944, 142 F.2d 588, 592, certiorari dismissed, 323 U.S. 806, 65 S.Ct. 264, 89 L.Ed. 643; United States v. Rutkin, 3 Cir., 1953, 208 F.2d 647, 654. Cf. Mesarosh v. United States, 1956, 352 U. S. 1, 9, 77 S.Ct. 1, 1 L.Ed.2d 1. In any event, there was sufficient testimony from witnesses other than Cody to establish the unfair labor practices of the respondent.

Petition granted.