BREWERY AND BEVERAGE DRIVERS AND WORKERS, LOCAL NO. 67, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 13883.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 3, 1958.

Decided May 1, 1958.

Mr. Martin F. O'Donoghue, Washington, D. C., with whom Messrs. Thomas X. Dunn and Patrick C. O'Donoghue, Washington, D. C., were on the brief, for petitioner.

Mr. Owsley Vose, Atty., N.L.R.B., with whom Messrs. Stephen Leonard, Associate Gen. Counsel, N.L.R.B., and Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., were on the brief, for respondent.

Before PRETTYMAN, WASHINGTON and BURGER, Circuit Judges.

WASHINGTON, Circuit Judge.

The Brewery and Beverage Drivers and Workers, Local Union No. 67, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO (the Union), ask this court to set aside that portion of an order of the National Labor Relations Board (the Board) which dismissed an unfair labor practices complaint. See 117 N.L.R.B. 1163 (1957). The complaint charged that the Washington Coca-Cola Bottling Works, Inc. (the Company), had violated Sections 8(a)(1) and 8(a)(5) of the Labor Management Relations Act of 1947, 61 Stat. 140, 141, 29 U.S.C.A. § 158(a)(1), (5) (1952).[1] The Board found that the Company had violated Section 8(a)(1), saying: "[I]ts conduct demonstrates a clear pattern of interference, restraint, and coercion of its employees in their efforts to exercise the rights guaranteed them in Section 7 of the Act." 117 N.L.R.B. 1164. But the Board dismissed the complaint insofar as it charged the Company with violating Section 8(a)(5) of the Act by refusing to bargain. The Board held that "a substantial variance from the requested unit will preclude a finding that a proper bargaining demand has been made. In the present case it is clear that the Union requested recognition in a unit substantially different from the unit alleged at the hearing, and found by the Trial Examiner, to be appropriate." 117 N.L.R.B. 1166.

Briefly, the facts relevant to the charge of refusal to bargain are as follows: The Company sells its bottled drink to retail stores, and services bottle-vending machines. It also maintains vending machines which dispense the drink in a paper cup. The employees who perform these functions were described by the Trial Examiner as follows:

"The *driver-salesmen*, who number about 44 and who are sometimes called conventional salesmen and route salesmen, sell and deliver bottled Coca-Cola to retail outlets, each driver-salesman having a fixed route over which he travels by means of one of the [Company's] trucks. * * * The *full service drivers*, who number about eight, deliver bottled Coca-Cola to dispensing machines which the [Company] owns and which are located at various types of establishments throughout the city. They fill the machines, make sure that same are in sanitary and working order, and collect the empty bottles and the money in the machines' cashboxes. The *cup route drivers*, numbering about three, have duties similar to those of the full service drivers, since each delivers Coca-Cola to a dispensing machine. The cup route drivers, however, do not deliver bottled Coca-Cola. They deliver the syrup and other essentials to machines which dispense the drink in paper cups. The work of both the full service and cup route drivers is a part of their training to become driver-salesmen. The *sales trainees*, who number about three, are persons in training to become full service or cup route drivers as a preliminary step to becoming driver-salesmen." (Emphasis added). 117 N.L.R.B. 1175.

---

1. "§ 158. Unfair labor practices
    "(a) It shall be an unfair labor practice for an employer—
    "(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
    \*  \*  \*  \*  \*

"(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159 (a) of this title."

On January 15 and again on January 19, 1953, the Union made certain requests for bargaining. Each time the Company refused, insisting upon an election. On January 26, 1953, the Union's business agent Caton requested the Company to sign a statement recognizing the Union as sole bargaining representative of the Company's "drivers and driver-salesmen." Again the request was rejected. Later on that date, Caton asserted by letter to the Company that the Union represented 39 out of 46 "drivers and driver-salesmen," and that since the Company had refused to bargain the Union would strike the following day and file charges with the Board. On January 27, 1953, the strike began. It was supported by a majority of the driver-salesmen as well as by a majority of the total group of employees described above.[2]

The Union, as noted above, had demanded bargaining in a unit consisting of "drivers and driver-salesmen." In the light of the Union's history with this Company, such a demand meant, and was understood to mean, driver-salesmen only. This was the same group of workers that comprised the unit agreed upon by the Union and the Company in consent elections conducted at the plant by the Board in 1944 and 1948.[3] The bill of particulars filed by the Board's General Counsel at the hearing described the appropriate unit as comprising driver-salesmen, full service drivers, cup route drivers and sales trainee drivers. The Trial Examiner and the Board agreed with the General Counsel that the larger unit was appropriate. The Examiner found that the Company had violated the Act by

refusing to bargain. But the Board, as quoted above, rejected the Examiner's conclusion. It held that since the Union had not made a demand for the unit subsequently found by the Board to be appropriate, the Company's refusal to bargain did not violate Section 8(a)(5).

We need not enter here upon a general discussion of the law relative to refusals to bargain,[4] or to the "appropriateness" of a bargaining unit. We think it sufficient to say that in our view, on the facts of this case, the Board's conclusion appears arbitrary. Cf. Packard Motor Car Co. v. National Labor Relations Board, 1947, 330 U.S. 485, 491, 67 S.Ct. 789, 91 L.Ed. 1040. Here the Union made a bargaining demand for a unit that neither the Board nor the Company had challenged in the 1944 and 1948 elections. And the Company never, until the hearing before the Trial Examiner, suggested that the driver-salesmen unit was inappropriate: the Company refused to bargain with *any* unit and committed serious unfair labor practices in an effort to undermine the Union. Nor could the Company legitimately have entertained any doubt of the Union's majority status since the Union, as found by the Examiner, possessed a clear majority in both the smaller and larger units. See National Labor Relations Board v. Sunrise Lumber & Trim Corp., 2 Cir., 1957, 241 F.2d 620, enforcing 115 N.L.R.B. 866 (1956); cf. Barlow-Maney Laboratories, Inc., supra at 941–43. Last, on the facts of this case, we do not think the variance between the unit sought and the unit later found appropriate can be characterized as "substantial." The vast majority

2. As found by the Examiner: "Of those 58 employees, 33 testified that they participated in the strike by voluntarily withholding their labor and by picketing at various times over a period of months. There is also reliable testimony by some of those 33 employees that 7 additional employees engaged in strike activity. The employees who testified concerning their strike activity constitute a majority of the employees in the appropriate unit, and when we add to their number the employees who were not witnesses but who, according to the testimony, were also strikers and pickets, the Union's majority becomes substantial." 117 N.L.R.B. 1199.

3. The Union lost both of those elections.

4. See National Labor Relations Board v. Columbian Enameling & Stamping Co., 1939, 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660; Zall v. National Labor Relations Board, 9 Cir., 1953, 202 F.2d 499; Barlow-Maney Laboratories, Inc., 65 N.L.R.B. 928, 943 (1946).

of employees were driver-salesmen; those added by the Board, the Examiner and the General Counsel were employees in training to become driver-salesmen. Cf. Seven Up Bottling Co., 92 N.L.R.B. 1622, 1635-36 (1951); Terre Haute Coca Cola Bottling Co., 100 N.L.R.B. 435 (1952). All the men drove trucks and dispensed Coca-Cola. Cf. Smith Transfer Co., 100 N.L.R.B. 834 (1952). The Board's finding, under the circumstances, cannot stand.

The order of the Board will therefore be set aside and the case remanded for further proceedings not inconsistent herewith.

So ordered.