**TIDEWATER OIL COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 184, Docket 29668.

United States Court of Appeals
Second Circuit.

Argued Dec. 10, 1965.

Decided April 5, 1966.

C. J. Head, of Hecht, Hadfield, Hays & McAlpin, New York City, for petitioner.

Melvin Pollack, Atty., N. L. R. B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Vivian Asplund, Atty., N. L. R. B., on the brief), for respondent.

Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

The Company petitions to review and set aside an order of the National Labor Relations Board, 151 NLRB No. 128, and the Board counterpetitions for enforce-

ment. Sec. 10(c), (e) of the Act, 29 U.S.C. § 151 et seq. The Board found that the Company violated § 8(a) (5) and (1) of the Act by refusing to bargain with the Union (Local 341, United Marine Division, National Maritime Union, AFL-CIO) certified by the Board following representation proceedings. Error found, petition to review granted and enforcement denied.

The Company and Union entered into a Stipulation for Certification Upon Consent Election. The agreement defined the appropriate bargaining unit as

"all operating employees, including maintenance mechanics, truck drivers, and warehouse-yardmen at the Employer's Newburgh, New York plant, excluding all non-operating employees, including confidential field stenographers, office clericals, guards, watchmen, professional and supervisory employees as defined in the Act."

The Company operates a bulk storage terminal at Newburgh where it sells automobile products, both to customers who come there and to service stations by delivery. The Company also operates a depot at Peekskill, New York, which is staffed by one man, a yard foreman, and from which no deliveries are made. At Newburgh are employed, besides supervisors, five truck drivers and one warehouseman-yardman. Additionally, Joseph White, whose ballot and status are at issue, is a maintenance (pump) mechanic who repairs equipment of the Company's customers in the field. (He also relieves the yard foreman at Peekskill one and one-half days a week.) The truck drivers begin work at the terminal and return there at night. White is supervised by the Newburgh supervisors, but he does not report daily to Newburgh, and takes the company service truck allotted him home each night. On average he reports to the terminal one and one-half times a week. While his time and attendance records are kept at Newburgh, he is paid by bank check purchased at Newburgh and mailed to him, rather than in cash like the other six employees.

White was a member of the preceding union which represented Newburgh employees. After a strike, certain members, White included, petitioned for decertification of the old union, but as the union disclaimed any interest in these employees, the petition was dismissed. The attorney for that union also represented the present union. He was present at the negotiations resulting in the stipulation. In these negotiations there was distributed a list of the seven employees, including White. Each employee was discussed. As to White, the attorney said, "he is the pump mechanic who runs this truck out of his house," or words to that effect. Opposite each name on the list was written the initials of the employee's job; for White was written "MM," for maintenance mechanic.

The parties then drafted the unit of operating employees quoted above. The list of employees was not signed and did not become a part of the agreement. At the election three votes were cast for the Union, two against, and two were challenged. Only one, that of White, is at issue here. The Regional Director investigated the challenge, which was made on the ground that White was a supervisor; later the Union altered its claim to assert that White was not employed at Newburgh. The Regional Director upheld the challenge. The Board, after exceptions were filed, directed a hearing. The Hearing Officer recommended that the challenge to White's ballot be overruled. The Board disagreed, and found that White did "not share a community of interest with the operating employees at the employer's Newburgh plant."

The Company refused to bargain in order to obtain review; the Union filed an unfair labor practice charge; and the Regional Director filed a complaint. The Board concluded that the Company violated the Act, supra, and issued an order requiring the Company to cease and desist, to bargain on request, and to post appropriate notices. 151 NLRB No. 128.

Since the Company concedes it refused to bargain, the issue is whether the Board properly excluded White's ballot. The Board will honor the parties' agreement on eligibility expressed in a signed eligibility list where the agreement contains an express provision that the list shall be binding as to eligibility, Norris-Thermador Corp., 119 NLRB 1301 (1957), or where, despite the absence of such provision, the parties discussed the employees by job or name and had full opportunity to consider their eligibility. See Shoreline Enterprises Inc. of America v. NLRB, 262 F.2d 933, 69 A.L.R.2d 1174 (5 Cir. 1959).[1] But here the parties did not sign the list of named employees; it did not become a part of the consent agreement and the Board properly looked rather to the stipulated definition of the bargaining unit.

In such cases, where the parties stipulate that the appropriate unit will include given jobs, the Board may not alter the unit; its function is limited to construing the agreement according to contract principles, and its discretion to fix the appropriate bargaining unit is gone. In NLRB v. J. J. Collins' Sons, 332 F.2d 523 (7 Cir. 1964), the Stipulation defined the unit to include "[a]ll paper cutting machine operators, all folding machine set-up men, all hand bookbinders and their apprentices." The company challenged the ballot of a stockhandler; the Board had found that this employee, though excluded from the agreed unit, had a community of interest with the included employees and should therefore be counted. The court denied enforcement, *concluding that the Board could not thus expand the agreed-upon unit.*

Similarly, in NLRB v. Joclin Mfg. Co., 314 F.2d 627 (2 Cir. 1963), the Stipulation described the unit as "[a]ll produc-tion and maintenance employees, excluding office, clerical and professional employees * * *." The Board had counted the votes of two clerical workers, on the ground that only office clericals, but not plant clericals, were excluded. The court held that the Board's function was one of contract interpretation, that the intent of the parties controlled, and that the question should be redetermined by the Board on remand. See also NLRB v. United Dairies, 337 F.2d 283 (10 Cir. 1964).

But the Board here claims that principles of community of interest are relevant to the construction of the phrase "at the Employer's Newburgh, New York plant." This is reconcilable with *Collins* and *Joclin,* since the Board is not trying to expand or contract the job categories which have been agreed upon as comprising the bargaining unit. Rather, it is engaged in applying job categories to given individuals. Compare The Magnavox Co., 126 NLRB 1419, 1420–1 (1960). We conclude, however, that the Board was incorrect.

Here the parties clearly had in mind White when they defined the unit to include maintenance men. White was the only maintenance man. (The fact that his category is written in the plural is without significance; the same was done as to another category, "warehouse-yardmen," of which there was only one.) Especially where there are a limited number of employees, and the parties are able to, and do, scrutinize each name, it is unlikely that the parties intended to leave to the Board the right, in the end, to determine whether such a given employee will be entitled to vote. As in *Shoreline Enterprises,* supra, the fact that the parties discussed the employees by name or job indicates that they intended to be bound.

1. And the Board has held that despite a valid eligibility list, where the stipulation is otherwise, it will look to the stipulation. In Greensboro Coca-Cola Bottling Co., 120 NLRB 84 (1958), the list included the names of certain employees whose jobs were not among those described in the stipulation as in the unit. These employees were excluded. And in Prestige Hotels, Inc., 125 NLRB 207, 208 (1959), the Board included an employee whose name was absent from the list, because he was held to be within the unit the stipulation described.

It is true that the Board has declined to give effect to a consent agreement even where the intent of the parties is clear, where to do so would run counter to a fundamental principle of national labor policy. This practice, analogous to refusing to enforce contracts as against public policy or illegal, derives from *Norris-Thermador*, supra, where the Board said it would be bound by the written eligibility list expressly binding the parties unless the inclusion or exclusion of certain employees contravened the Act or established Board policy. Thus the Board will not permit supervisory employees to be included in the unit, and will exclude them despite the parties' intent, as with one employee, Cornell, here. See also Times-World Corp., 151 NLRB No. 91, 1965 CCH NLRB ¶ 9206 (1965); Lake Huron Broadcasting Corp., 130 NLRB 908 (1961). And the Board may invoke established Board policy to include an employee the parties had expressly agreed to exclude, see Westlake Plastics Co., 119 NLRB 1434 (1958); see also Continental Baking Co., 122 NLRB 1074, 1076 (1959). Contrast Harvey Russell, 145 NLRB 1486 (1964), where the parties had impliedly (it was not a consent-stipulation situation) agreed to include an employee but the Trial Examiner excluded him on the ground that he was not a regular employee; the Board disagreed, and dismissed the complaint.[2]

■ In our view no established Board policy or goal of the Act is contravened by including White. We view community of interest as a doctrine useful in drawing the borders of an appropriate bargaining unit, a function well within the discretion of the Board. But we do not conclude that the doctrine remains as an established Board policy sufficient to override the parties' intent when the Board, in the interests of furthering consent elections, allows the parties to fix the unit. While the doctrine might permissibly be used to exclude an employee with no contacts at all in the unit, it is

quite another matter for the Board to weigh White's contacts with Newburgh against those elsewhere, *de novo*, in order to exclude him. Compare *J. J. Collins' Sons*, supra. If community of interest is not a valid basis for expanding the unit by expanding job categories, as in *Collins*, it is no more a basis for contracting the unit by deciding what employees work "at" the Newburgh plant.

The Board distinguished *Joclin Mfg.*, supra, on the ground that "the stipulated unit contained no geographical limitation to a particular plant or area." In our view the distinction is valid insofar as it permits the Board to inquire into the parties' actual intent to leave open for the Board the question whether an employee is employed "at" the plant, and even the intent to permit the Board to resolve that question on principles of community of interest. But we are not satisfied that this is what was done by the Board here, and, furthermore, as to White, as the record now stands, we conclude that the parties intended that he be in the unit and that for the Board to have said otherwise would have been clearly erroneous. While the Board perhaps may conclude otherwise in the case of employees not discussed or listed, and so could examine the parties' intent to leave to the Board the question whether the employee was "at" the Newburgh plant, it is otherwise as to White.

■ The Board felt that

Despite discussions between the parties as to whether certain named employees, White among them, should be included in the unit, the stipulation reflected no agreement as to any named individual employee who might be included in the category quoted from the stipulation; the parties (after describing a category which they agreed had the requisite community of interest) impliedly committed to the Board the determination of whether White fitted that category by being employed in such a position *at that plant*.

---

2. The Board hinted, however, that it felt the employee was enough connected with the unit so that his exclusion did not contravene "any provision of the Act or established Board policy."

There is, however, nothing in the Stipulation for Certification upon Consent Election to show that the parties to it agreed that the job categories described "had the requisite community of interest." Accordingly we do not base our decision on the claim that the parties agreed White had the requisite community of interest, and that the Board had to honor that agreement. We hold rather that the parties agreed that White should be in the unit irrespective of the intensity of his community of interest, and that he was not so unrelated to the unit that the Board could disregard their agreement.

We do not reach the Company's claim that the challenge was not timely because the Union altered the grounds for its challenge three weeks after the election.

Petition to review granted; the Board's order is set aside. Enforcement denied. The Board is directed to count White's ballot.