**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

and

**Local 1034, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Intervenor,**

v.

**ORTIZ FUNERAL HOME CORP., Respondent.**

**No. 730, Docket No. 80–4207.**

United States Court of Appeals, Second Circuit.

Argued Jan. 29, 1981.

Decided June 8, 1981.

Rehearing and Rehearing En Banc Denied Oct. 5, 1981.

Steven M. Fetter, Atty., N. L. R. B., Washington, D. C. (Williams A. Lubbers, General Counsel, John E. Higgins, Jr., Deputy General Counsel, Robert E. Allen, Acting Associate General Counsel, Elliott Moore, Deputy Associate General Counsel, Vivian A. Miller, Atty., N. L. R. B., Washington, D. C., of Counsel), for petitioner.

Richard A. Weinmann, New York City, for intervenor.

. Morris Weissberg, New York City, (N. George Turchin, New York City, of Counsel), for respondent.

Before VAN GRAAFEILAND and KEARSE, Circuit Judges, and BRAMWELL, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

This is a petition to enforce an order of the NLRB which held that respondent, Ortiz Funeral Home Corp., had violated section 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) and (1), by:

(1) refusing on and after March 28, 1978 to recognize and bargain with Local 1034, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the Union), for a new contract covering all unit employees;

(2) failing to apply the previous contract to all unit employees between September 23, 1977 and its expiration on March 21, 1978, and by failing thereafter to continue to maintain the wages, hours, terms and conditions of employment established pursuant to that contract.

For reasons hereafter discussed, the petition for enforcement is granted.

Respondent operates a funeral business with ten chapels in the New York City metropolitan area. In 1975, following an organizational strike and unfair labor practice charges, an informal settlement agreement was reached between respondent and the Union and approved by the Board's Regional Director. Pursuant to this agreement, respondent agreed to recognize and bargain with the Union as the exclusive representative of the employees in the following unit:

[A]ttendants, floorpeople, receptionists, interpreters and porters but excluding licensed embalmers, undertakers, drivers, managers, office clerical employees, bookkeepers, guards, watchmen and supervisors as defined in the Act.

Thereafter, respondent and the Union could not agree whether employees whose duties included clerical work, driving, or guarding, in addition to receiving visitors, were properly included as "receptionists" in the bargaining unit. Because of this dispute, respondent refused to sign a collective bargaining contract incorporating the unit definition contained in the settlement agreement until ordered to do so by the Board. *See* 225 NLRB 1342 (1976). The Board found that "the parties reached an oral binding agreement on all material aspects of a collective-bargaining contract" and that the arbitration clause of the agreement was designed to resolve any uncertainty as to membership in the bargaining unit. *Id.* at 1345. The Board concluded that the unit, described as above quoted, was an appropriate unit for the purpose of collective bargaining, and held that respondent was guilty of an unfair labor practice for refusing to sign it. *Id.* This Court enforced the order without opinion on May 6, 1977, *see* 559 F.2d 1204 (2d Cir. 1977),

* Of the Eastern District of New York, sitting by designation.

following which a written contract, effective for a three-year period ending on March 21, 1978 was signed.[1]

The contract contained provisions for a union shop, checkoff of union dues, and employer payments to welfare, severance and retirement funds. Respondent applied these provisions only on behalf of the small number of employees whom it considered to be in the bargaining unit. In August 1977, after conducting an audit of respondent's payroll records, the Union concluded that respondent was failing to make contributions as provided in the contract. Discussion on the issue proved fruitless, and the Union invoked the contractual arbitration process.

The arbitrator was asked to determine whether respondent had violated the contract by failing to maintain a checkoff of union dues and to make payments to welfare, severance and retirement funds on behalf of the employees whose membership in the Union was disputed. On November 10, 1978 the arbitrator ruled that the contract required respondent to make contributions on behalf of all the disputed employees except one "secretary-bookkeeper". On April 19, 1979 the New York State Supreme Court vacated the arbitrator's award on the ground that the arbitrator had exceeded his powers by reclassifying employees. The Appellate Division, First Department, reversed and reinstated the award. *See Adelstein v. Ortiz Funeral Home Corp.*, 75 App. Div.2d 529, 426 N.Y.S.2d 768 (1980). On February 17, 1981 the Court of Appeals affirmed without opinion. *Adelstein v. Ortiz Funeral Home Corp.*, 52 N.Y.2d 997, 438 N.Y.S.2d 80, 419 N.E.2d 1079 (N.Y.1981).

While the arbitration under the old contract was pending, the parties met in March 1978 to discuss a new one. However, their continuing disagreement regarding the composition of the bargaining unit precluded any progress toward consummation of a contract. Respondent submitted a list of its employees with their purported job classifications, asserting that only three of them were unit employees. The Union stated that it represented approximately twenty employees on the list.

On March 23, 1978, the Union filed an unfair labor practice charge alleging that respondent refused to bargain for a new contract. The complaint issued by the Board on May 9, 1978 described the bargaining unit as it was described in the expired contract and in the Board's 1976 order. It alleged that respondent had failed and refused to negotiate with the unit thus described for the new three-year contract until the Union produced proof that it was the majority representative of the employees in the unit.

Not content with the unit description contained in the contract, the Administrative Law Judge redefined the unit and ordered respondent to cease and desist from refusing to recognize and bargain with the Union as the representative of the following unit:

> All employees at Respondent's main office and facility and at its branch locations, including receptionists, receptionist-porters, office clerks, office managers and office clerk-drivers, but excluding licensed funeral directors, secretary-bookkeepers and drivers normally and regularly engaged in the performance of such functions, and excluding supervisors as defined in Section 2(11) of the Act.

The Administrative Law Judge said that he had revised the definition of the unit "to reflect the Company's most recent job classifications." He also stated:

> As the complaint alleges an unlawful refusal to bargain only since on or about March 28, 1978, I have not provided any remedy for the Company's failure to apply the terms of the expired contract to the unit employees.

Despite these statements by the Administrative Law Judge, the Board held that

1. The contract provided in part:
 Excluded from the coverage of this Agreement are licensed embalmers, undertakers, drivers, managers, office clerical employees,

bookkeepers, guards, watchman [sic] and supervisors as defined in the Labor Management Relations Act of 1947 as amended, hereinafter referred to as the "Act."

respondent's refusal to bargain on a new contract was simply a continuation of respondent's refusal to apply the expired collective-bargaining agreement "to those same employees." The Board found the respondent had violated section 8(a)(5) and (1) by failing to apply the expired contract to all unit employees between September 23, 1977 [2] and the contract's expiration date, March 21, 1978, and by failing thereafter to continue to maintain the wages, hours, and terms and conditions of employment established pursuant to the contract. It ordered respondent to make the various payments to the employees and the Union which the terms of the contract required.

## DISCUSSION

Our task in passing upon the Board's petition has not been lightened by the manner in which the Board itself has handled the lengthy dispute between the parties.

Although it was apparent at the time respondent and the Union entered into their 1976 settlement agreement that they disagreed sharply as to the makeup of the bargaining unit, the Board ordered them to execute a collective-bargaining contract with the dispute unsettled. The Board said that any uncertainty as to which employees were in the unit was a matter "which the contract's grievance-arbitration machinery is designed to resolve." Thereafter, the Union followed what it must have considered to be the Board's suggestion and demanded arbitration of the parties' differences arising out of the 1975–78 contract. Because negotiations for a new contract were entered into prior to the arbitrator's decision, the Union also filed an unfair labor practice charge which was based upon respondent's refusal to accede to the Union's definition of the unit and to bargain accordingly. The Administrative Law Judge confined his order to the charges made in the complaint. Instead of limiting

its remedy in a similar manner, the Board went back to the expired contract and found respondent guilty of unfair labor practices arising out of respondent's allegedly erroneous interpretation of the unit membership provided for in that contract. Neither the Administrative Law Judge nor the Board deferred to the arbitration award.[3]

The Board found that "the issue of [sic] whether Respondent violated Section 8(a)(5) and (1) by failing to apply the provisions of the collective-bargaining agreement before its expiration, and thereafter by failing to continue to maintain the wages, hours, and terms and conditions of employment established pursuant to that agreement, was closely connected to the subject matter of the complaint and has been fully litigated." We disagree.

 The original bargaining unit in this case was set up by agreement between the parties. As bargaining history, it was not conclusive upon the Board in determining what was an appropriate unit for subsequent contract negotiations. *Westinghouse Electric Corp.*, 118 NLRB 1043, 1047 (1957). In making an independent determination of a proper bargaining unit, the Board may exercise reasonable discretion pursuant to section 9(b) of the National Labor Relations Act, 29 U.S.C. § 159(b). *See NLRB v. Sunrise Lumber & Trim Corp.*, 241 F.2d 620, 624 (2d Cir.), *cert. denied*, 355 U.S. 818, 78 S.Ct. 22, 2 L.Ed.2d 34 (1957); *NLRB v. Libbey-Owens-Ford Glass Co.*, 241 F.2d 831, 834–36 (4th Cir. 1957).

 With respect to the agreed-upon unit, however, the Board was not making an independent determination of unit membership; it was construing a contract. *NLRB v. Joclin Manufacturing Co.*, 314 F.2d 627, 633 (2d Cir. 1963). The question was one of contract interpretation that

---

**2.** Because of limitations contained in section 10(b) of the Act, 29 U.S.C. § 160(b), the complaint of unfair labor practices is limited to the six-month period prior to the filing of the charge with the Board, which occurred in this case on March 23, 1978.

**3.** At the time of the Board's decision, there was still uncertainty as to whether the New York Court of Appeals would affirm the Appellate Division's reinstatement of the arbitrator's award.

should have been governed by the intentions of the parties. *Tidewater Oil Co. v. NLRB*, 358 F.2d 363, 365 (2d Cir. 1966); *NLRB v. Tennessee Packers, Inc.*, 379 F.2d 172, 182 (6th Cir.), *cert. denied*, 389 U.S. 958, 88 S.Ct. 338, 19 L.Ed.2d 364 (1967). Although, in determining that intent, the Board was not confined to the four corners of the contract, *International Union of Electrical, Radio & Machine Workers v. NLRB*, 418 F.2d 1191, 1201 (D.C.Cir.1969), the Board could not alter the unit that had been agreed upon and approved. *Tidewater Oil Co. v. NLRB, supra*, 358 F.2d at 365.

We have examined very carefully the opinions of the Administrative Law Judge and the Board and find no discussion whatever of the parties' intentions. The Administrative Law Judge treated the settlement agreement as the equivalent of a certification following a Board-conducted election, and followed general Board standards in determining unit composition. He informed counsel at the hearing that he was unwilling to "get into the negotiation that led up to the choice of the particular [contract] words" and stated in his decision that he had not taken into consideration the arbitration testimony of respondent's president concerning his version of the 1975 negotiations. The Board apparently accepted the reasoning of the Administrative Law Judge.

■ If the Board's order had to stand on its own merits, we would be inclined to deny enforcement and remand for a hearing on the issue of intent. However, with regard to this issue, there is one point on which there has never been any disagreement between respondent and the Union. By the terms of their original settlement stipulation, they agreed to submit their disputes to arbitration. The parties clearly intended to be bound by the arbitrator's decision and have consistently expressed their willingness to be so bound. We need not decide whether, in view of the Board's 1976 order, it also should have deferred to the arbitrator's determination. *See Douglas Aircraft Co. v. NLRB*, 609 F.2d 352 (9th Cir. 1979). If the Board had done so, it would have complied with the parties' intentions and reached the same result that it did. We see no reason, therefore, to reject that result because we are troubled by the manner in which it was reached.

The Board's petition for enforcement of its order is granted.